Not for Publication

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **GRANT MANDIGORA,**<br><br>        **Plaintiff,**<br><br>    v.<br><br>**AFSTRATIOS ZEVLIKARIS, KIM MINATEE, SHARON WALLI, SARAH TURK, THERESA PITTMAN, JUDGE RICHARD WISCHUSEN, and JOHN DOES 1-10, and all persons or entities acting in concert with any Defendant,**<br><br>        **Defendants.** | **Civil Action No.: 25-1306 (ES) (SDA)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

      Before the Court is *pro se* plaintiff Grant Mandigora's ("Plaintiff") Second Amended Complaint, (D.E. No. 18 ("SAC")), Notice of Motion for Preliminary Injunctive and Declaratory Relief, (D.E. 17 ("PI Motion")), and Emergency Motion for Constitutional Protective Relief, (D.E. No. 23 ("Emergency Motion")). Having carefully considered Plaintiff's submissions and other relevant portions of the record without oral argument (*see* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b)); and it appearing that:

      1.     Plaintiff commenced this matter on February 18, 2025, asserting claims against Defendants Afstrati Zevlikaris, Kim Minatee, Sharon Walli, and Sarah Turk. (*See generally* D.E. No. 1). Plaintiff also filed an application to proceed *in forma pauperis* ("IFP") on the same date.

(D.E. No. 1-3).  The next day, Plaintiff filed both an Amended Complaint, (D.E. No. 2),[1] and a motion for injunctive relief.  (D.E. No. 3).

2. By Order dated March 31, 2025, the Court granted Plaintiff's IFP application and dismissed Plaintiff's Amended Complaint in its entirety, without prejudice to Plaintiff's ability to file a second amended complaint curing the deficiencies the Court had noted therein.  (D.E. No. 9 at 8–9).  The Court also denied Plaintiff's motion for injunctive relief.  (*Id.*).

3. On June 30, 2025, Plaintiff filed both the SAC and PI Motion.  In his SAC, Plaintiff once again asserts claims against Defendants Zevlikaris, Turk, Pittman, and Minatee, and also adds New Jersey Superior Court Judge Richard Wischusen as a defendant.  (SAC ¶¶ 6–11).  Plaintiff alleges violations based on a series of events involving (i) his August 17, 2024 arrest in Fairfax, Virginia, (SAC ¶¶ 24–27), (ii) the State of New Jersey's ongoing criminal prosecution against Plaintiff, (*id.* ¶¶ 30–48), and (iii) "Fairfax County CPS's" removal of Plaintiff's minor child from Plaintiff's custody, at the alleged behest of non-party Department of Child Protection and Permanency ("DCCP") (and, specifically, Defendants Minatee and Pittman as DCCP caseworkers), (*id.* ¶¶ 28–29).

4. Based on those events, Plaintiff has asserted six claims under 42 U.S.C. § 1983, alleging that Defendants violated several of his constitutional rights.  First, Plaintiff contends that Defendants Zevlikaris, Turk, Pittman, and Minatee violated his Fourth Amendments rights in connection with his allegedly unlawful arrest in Virginia.  (*Id.* at Count I[2] ¶¶ 1–6 ("Count I")).  Second, Plaintiff alleges that all Defendants violated his procedural due process rights under the

---

[1] In that pleading, Plaintiff asserted claims against Zevlikaris, Minatee, Turk, and Theresa Pittman, but removed Sharon Walli as a named defendant.  (*Id.*).

[2] As Plaintiff begins each Count of his SAC with paragraph "1" (i.e., rather than using continuous paragraph numbering throughout the pleading), the Court specifies the Count at issue for the sake of clarity.

2

Fourteenth Amendment both when removing Plaintiff's minor child from his custody and, later, in connection with Plaintiff's ongoing criminal prosecution. (*Id.* at Count II ¶¶ 1–7 ("Count II")). Third, Plaintiff contends that Defendants Zevlikaris, Turk, Pittman, and Minatee violated his Fourteenth Amendment rights through their roles in removing Plaintiff's minor child from Plaintiff's custody. (*Id.* at Count III ¶¶ 1–5 ("Count III")). Fourth, Plaintiff asserts that Defendants Zevlikaris and Turk violated his Fourteenth Amendment rights by denying him access to "critical exculpatory evidence" in the context of his ongoing criminal prosecution. (*Id.* at Count IV ¶¶ 1–4 ("Count IV")). Fifth, Plaintiff alleges that Defendant Turk unlawfully retaliated against him for exercising his First Amendment rights (i.e., litigating the ongoing criminal matter) by "improperly objecting to discovery, making unsubstantiated allegations in court, and communicating *ex parte* hearsay from other to actors to prejudice judicial proceedings." (*Id.* at Count V ¶¶ 1–4 ("Count V")). Finally, Plaintiff seeks injunctive relief against Defendants Turk, Zevlikaris, and Judge Wischusen to prevent "ongoing constitutional violations" in connection with his criminal prosecution. (*Id.* at Count VI ¶¶ 1–5). The Court notes that Plaintiff explicitly seeks only declaratory and injunctive relief, rather than monetary damages. (*Id.* at 13–14).

       5.      Because the Court previously granted Plaintiff's IFP application and dismissed his Amended Complaint, without prejudice, upon screening pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must now screen the SAC for sufficiency before permitting service of process. *See Burrell v. Loungo*, 750 F. App'x 149, 154 (3d Cir. 2018). Specifically, the Court must *sua sponte* dismiss any claim that (i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). "When considering whether to dismiss a complaint for failure

3

to state a claim pursuant § 1915(e)(2)(B)(ii), the District Court uses the same standard it employs under Fed. R. Civ. P. 12(b)(6)." *Vaughn v. Markey*, 813 F. App'x 832, 833 (3d Cir. 2020).

6.  To survive dismissal under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).

7.  Moreover, because Plaintiff is proceeding *pro se*, the Court construes the SAC liberally and holds his filing to a less stringent standard than submissions filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court, however, need not "credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

8.  As the Court has noted, Plaintiff's claims fall into three "buckets": (i) those related to his August 2024 arrest; (ii) those related to his ongoing criminal proceedings; and (iii) those related to the custody of his minor child. The court will address each in turn.

9.  The Court begins with Plaintiff's false arrest claims against Defendants Zevlikaris, Turk, Pittman, and Minatee. (SAC at Count I). Plaintiff has not pled facts sufficient to establish a false arrest claim against any of these defendants. "'The proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but

4

whether the arresting officers had probable cause to believe the person arrested had committed the offense.'" *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (quoting *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)); *accord Islam v. City of Bridgeton*, 804 F. Supp. 2d 190, 197 (D.N.J. 2011) ("To prove a claim for false arrest, a plaintiff must prove two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause."). Of the four defendants named in Count I, only Defendants Zevlikaris and Turk appear to have allegedly participated in Plaintiff's August 17, 2024 arrest. (SAC ¶¶ 7 & 24). Specifically, Plaintiff alleges that officers of the Fairfax Police Department arrested him "acting in conjunction with and at the direction of" those defendants. (*Id.* ¶ 24). Plaintiff also alleges, however, that "[t]he arrest was purportedly based on a New Jersey family court bench warrant allegedly issued by Judge Gavin Handwerker." (*Id.*). While Plaintiff alleges that he has never seen a copy of that warrant, (*id.*), his limited factual allegations, taken as true, still do not state a plausible false arrest claim against Defendants Zevlikaris or Turk. *See Zuber*, 871 F.3d at 255.

      10.     Plaintiff's false arrest claims are also facially deficient as to Defendants Pittman and Minatee. Those claims, it appears, are based on Plaintiff's allegation that Pittman and Minatee provided unsworn and incorrect information (i.e., that Plaintiff's minor son was "missing and endangered") that ultimately provided the basis for Judge Handwerker's issuance of a warrant and, in turn, Plaintiff's arrest. (SAC ¶¶ 9–10 & 25–27). Neither Pittman nor Minatee arrested Plaintiff, however. The Court acknowledges that "a plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (1) that [a] police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" *Wilson v.*

5

*Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir.1997)). Assuming, without deciding, that Pittman and Minatee might be subject to this standard, despite their roles as caseworkers rather than police officers, and the fact that neither is alleged to have taken part in Plaintiff's arrest, Plaintiff has not pled facts sufficient for the court to reasonably infer that either defendant made false statements "knowingly and deliberately, or with a reckless disregard for the truth[,]" let alone that they knew their statements would be used in a warrant application. *Id.* Rather, Plaintiff suggests that Pittman and Minatee's alleged statements that Plaintiff's son was "missing and endangered" were false because Plaintiff had previously advised "the court" (i.e., not Pittman or Minatee), of his travel plans. The Court cannot reasonably infer liability based on these meager facts.

11. As Plaintiff has failed to state a cognizable claim for false arrest against any defendant, the Court will dismiss Count I of his SAC without prejudice, and will afford him a final opportunity to replead his false arrest claim.

12. The Court next finds that the abstention doctrine that the United States Supreme Court articulated in *Younger v. Harris* bars Plaintiff from pursuing claims falling into the second and third "buckets" in federal court. 401 U.S. 37 (1971). The *Younger* abstention doctrine reflects "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). Discussing the scope of *Younger* abstention, the United States Court of Appeals for the Third Circuit acknowledged that "abstention is not the presumptive course, but rather an exception to the general rule that federal courts must hear and decide cases within their jurisdiction." *Gonzalez v. Waterfront Comm'n of New York Harbor*, 755 F.3d 176, 180 (3d Cir. 2014) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)). Indeed, the Third Circuit

6

noted that *Younger* abstention applies "in only three 'exceptional' classes of cases: (1) 'state criminal prosecutions,' (2) 'civil enforcement proceedings,' and (3) 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Id.* (quoting *Sprint Commc'ns, Inc.*, 571 U.S. at 73). Moreover, abstention is only appropriate when (i) there are ongoing state proceedings that are judicial in nature; (ii) the state proceedings implicate important state interests; and (iii) the state proceedings afford an adequate opportunity to raise federal claims. *See Ocean Grove Camp Meeting Ass'n of United Methodist Church v. Vespa-Papaleo*, 339 F. App'x 232, 236 (3d Cir. 2009). For both the second and third "buckets" of claims, the Court finds that the circumstances of this case meet all of the requirements for *Younger* abstention.

13. The Court will begin with Plaintiff's claims related to the ongoing criminal prosecution against him, as they make up the bulk of the remaining claims in the SAC. Plaintiff alleges a panoply of grievances concerning that proceeding, including that: (i) Defendant Turk informed a judge that Plaintiff had violated pretrial conditions, without providing supporting evidence, and the judge refused to let Plaintiff respond, (SAC ¶¶ 31–32 & 46); (ii) Defendants either failed to produce documents in response to Plaintiff's requests (e.g., Defendant Zevlikaris allegedly did not respond to a subpoena) or interfered with such requests (e.g., Defendant Turk objected to Plaintiff's requests), (*id.* ¶¶ 33–37); and (iii) Judge Wischusen denied Plaintiff's motion to dismiss the indictment and Plaintiff's motion to compel Defendant Zevlikaris to respond to Plaintiff's subpoena, declined to provide written findings when denying Plaintiff's prior motions, and refused to provide "clarification" regarding the nature and scope of proceedings, thus subjecting Plaintiff to unfair surprise, (*id.* ¶¶ 38–44). Based on those allegations, Plaintiff has

7

asserted claims for violations of his First and Fourteenth Amendment rights. (*See generally id.* at Counts II, IV, V & VI).

14. Each of these claims involves Plaintiff's dissatisfaction with the conduct and results—thus far–of the State of New Jersey's ongoing criminal prosecution against him. Plaintiff asks this Court to address those grievances with injunctive relief that would, in effect, wrest control of that prosecution from the Superior Court. For instance, Plaintiff asks the Court to overturn certain of the Superior Court's discovery decisions (e.g., declining to compel certain parties to provide information), to usurp the Superior Court's authority to make others (e.g., "[a]n injunction enjoining Defendants from interfering with validly issued subpoenas or discouraging witnesses from complying"), to proactively direct what the Superior Court may and may not consider in that litigation (e.g., an injunction requiring Judge Wischusen to "[c]ease reliance on secret or extra-record materials in any ongoing criminal prosecution"), and to tell the Superior Court how and when to issue its decisions (e.g., an injunction requiring Judge Wischusen to "[i]ssue timely, written rulings on all dispositive motions implicating Plaintiff's rights"). (*See* SAC at 14).

15. To the extent Plaintiff's claims challenge his ongoing criminal prosecution in state court, *Younger* abstention is appropriate. First, that prosecution is, without question, judicial in nature. Second, state criminal prosecutions obviously involve important state interests. *See, e.g.*, *Solid Rock Baptist Church v. Murphy*, 555 F. Supp. 3d 53, 62 (D.N.J. 2021), *aff'd sub nom. Clark v. Governor of New Jersey*, 53 F.4th 769 (3d Cir. 2022) ("In this instance, it is clear that the ongoing state criminal prosecutions fall within the confines of *Younger* abstention and should be resolved in the jurisdiction in which they emanated—the state courts."); *Duran v. Weeks*, No. 10-0293, 2010 WL 1544391, at *2 (D.N.J. Apr. 16, 2010), *aff'd*, 399 F. App'x 756 (3d Cir. 2010) ("[A]s *Younger* itself demonstrates, when a state acts to ensure compliance with its own criminal statutes or state

constitution . . . important state interests are implicated."). As to the third requirement, Plaintiff bears the burden of establishing that "state procedural law barred presentation of [his] claims" in the ongoing state court proceeding. *Lazaridis v. Wehmer*, 591 F.3d 666, 670–71 (3d Cir. 2010). The Court finds that he has not carried that burden. Plaintiff argues that he "has been denied any meaningful opportunity to raise constitutional claims in state court. His motions have been ignored, no findings have been issued, and state procedures have failed to provide an adequate forum." (PI Motion at 8). Plaintiff also represents that the Superior Court of New Jersey, Appellate Division, has declined to take action on an interlocutory appeal. (D.E. No. 23 at 2). Even taking those conclusory statements as true, Plaintiff has not established that he would be unable to raise his constitutional challenges (or the lower court's refusal to consider them) on appeal in the ordinary course (i.e., on a non-interlocutory basis). *See, e.g.*, *Gonzalez*, 755 F.3d at 184 ("The Supreme Court has, on multiple occasions, affirmed decisions to abstain notwithstanding the state agency's refusal or inability to consider federal challenges in the initial administrative proceeding—at least where those challenges may be presented on appeal to the state court."). In short, Plaintiff has not "offer[ed] any legitimate reason why he could not raise his claims in the New Jersey state court system, and therefore this requirement is satisfied." *Frederick of Fam. Gonora v. Off. of Child Support Servs.*, 783 F. App'x 250, 252 (3d Cir. 2019).

16.   The Third Circuit has recognized that, even if all three requirements are met, "*Younger* abstention is not appropriate if the federal plaintiff can establish that (1) the state court proceedings are being 'undertaken in bad faith or for the purposes of harassment' or (2) some other extraordinary circumstance exists." *Id.* (quoting *Lazaridis*, 591 F.3d at 670). While Plaintiff contends that both bad faith and extraordinary circumstances are present here, he merely restates the factual bases for his claims (i.e., an allegedly unconstitutional arrest, wrongful reliance on

9

family court records, and denial of due process). (PI Motion at 8). Based on its careful review of the record before it, the Court finds no suggestion of harassment or bad faith, let alone the presence of any extraordinary circumstances that might make abstention inappropriate.

17.  In sum, the Court finds that it must abstain from exercising jurisdiction over Plaintiff's claims concerning his ongoing criminal prosecution. The Court will therefore dismiss those claims, without prejudice to Plaintiff's ability to pursue them in state court.

18.  The Court will now turn to Plaintiff's custody-related claims. In Counts II and III, Plaintiff alleges that Defendants violated his Fourteenth Amendment rights in connection with their respective roles in removing Plaintiff's minor child, A.M., from Plaintiff's custody. (*See generally* SAC Counts II & III; *see also id*. ¶¶ 28–29). Plaintiff contends that "[n]o lawful custody determination or parental fitness preceded the removal, in violation of Plaintiff's rights to familial integrity and due process under the Fourth and Fourteenth Amendments." (*Id.* ¶ 29). Having examined Plaintiff's requests for declaratory and injunctive relief, it does not appear that he seeks any relief regarding the custody issue. (*See generally id.* at 13–14). In any event, this Court has already determined that *Younger* requires the Court to abstain from interfering in what appears to be ongoing state court custody proceedings concerning A.M.

19.  In *Mandigora v. New Jersey Division of Children Protection and Permanency, et al.*, Civil Action Number 25-8593 ("Civil Action No. 25-8593"), Plaintiff challenged the very same August 17, 2024 removal, and sought relief under 42 U.S.C. § 1983, alleging that the defendants in that case had violated his Fourteenth Amendment rights by virtue of their roles in A.M.'s removal and/or seeking or acting in accordance with court orders concerning A.M.'s custody. (*See* D.E. No. 2-1 in Civil Action No. 25-8593 at Count I). Plaintiff also sought a declaratory judgment regarding the legality of those custody issues, (*id.* at Count III), as well as injunctive relief

prohibiting Defendants from acting in accordance with the Superior Court of New Jersey's various orders related to A.M.'s placement (*id.* at Counts IV and V). By Order dated June 24, 2025, this Court dismissed Plaintiff's claims in Civil Action No. 25-8593 pursuant to the *Younger* abstention doctrine. (*See generally* D.E. No. 5 in Civil Action No. 25-8593 ("June 24, 2025 Order")).

20. In its June 24, 2025 Order, the Court made specific findings that: (i) "the ongoing child custody proceedings that Plaintiff challenges herein are judicial in nature[,]" (*id.* at 7); (ii) "the state court proceedings implicate important state interests involving child custody and parental rights[,]" (*id.* (first citing *Wattie-Bey v. Att'y Gen.'s Off.*, 424 F. App'x 95, 97 (3d Cir. 2011) (finding, in the context of a *Younger* abstention analysis concerning state court child custody proceedings, that "'family relations are a traditional area of state concern."); and then quoting *Lazaridis*, 591 F.3d at 671 ("when the other elements of the *Younger* test are met, neither injunctive nor declaratory relief will be available 'in cases in which the federal relief would render the state court's orders or judgments nugatory' . . . 'This is a particularly appropriate admonition in the field of domestic relations, over which federal courts have no general jurisdiction . . . and in which the state courts have a special expertise and experience.'") (citations omitted)); (3) Plaintiff failed to carry his burden of establishing that "state procedural law barred presentation of [his] claims" in the ongoing state court proceeding[,]" (*id.* at 8 (quoting *Lazaridis*, 591 F.3d at 670–71)); and (4) nothing in the record suggested that the custody proceedings had been undertaken in bad faith or for the purposes of harassment, or that some other extraordinary circumstance militating against abstention existed[,] (*id.* at 8–9 (citations omitted)). As Plaintiff appears to be challenging the *same* custody proceedings herein, each of the aforementioned findings applies with equal force in this case. The Court must, therefore, abstain from exercising jurisdiction over Plaintiff's custody-related claims in accordance with *Younger*.

11

21.     Based on the foregoing, the Court must dismiss Plaintiff's SAC in its entirety, without prejudice.  Within regard to Count I, the Court will provide Plaintiff a ***final*** opportunity to re-plead his false arrest claim, addressing the shortcomings the Court has identified herein.  With respect to the balance of Plaintiff's claims, all of which are subject to *Younger* abstention, those claims are dismissed without prejudice to Plaintiff's ability to pursue them in state court.

22.     As the Court has dismissed the SAC, it will not consider the relative merits of Plaintiff's PI Motion and Emergency Motion.

An appropriate Order follows this Opinion.


                                                            *s/ Esther Salas*
                                                            **Esther Salas, U.S.D.J.**

Date:  February 17, 2026